GARDEN, JUDGE:
During 1971 Marble Cliff Quarries Company (Marble Cliff) contracted with the respondent for construction of Project I- *341 470-1 (8) (0), Ohio County, West Virginia. The work on the project commenced on January 17, 1972. In the course of construction, Black Rock Contracting, Inc., (Black Rock) acquired all of the assets of Marble Cliff and agreed to perform the subject contract.
On or about May 11, 1974, a major slide occurred on the project through no fault of Black Rock. As a result of the slide, the respondent shut down the earthwork operation. During a meeting on June 13, 1974, respondent’s representatives indicated to representatives of Black Rock that the contract would be rescinded as the respondent did not have access to the funds needed to correct the slide and complete the project. The respondent then notified Black Rock by letter dated June 25, 1974, that the contract was “mutually rescinded.”
As a direct and proximate result of the cancellation of the contract, Black Rock incurred substantial costs and damages including loss of income on six subcontracts in the amount of $294,354.04. Black Rock also incurred costs in the settlement of litigation and payment of attorneys’ fees in the amount of $18,387.42 in a related legal action brought against Black Rock by the Village of Bethlehem.
The first issue to be considered is whether or not Black Rock is entitled to recover the loss of income on the six subcontracts. To determine this issue the facts in the claim must be examined to first clarify whether the contract was “mutually rescinded” or was unilaterally cancelled by the respondent. At the first meeting which was held on June 13, 1974, Black Rock provided an estimate for the slide correction in the amount of $10 million. Representatives of the respondent indicated that funds were not available and that a study of the method of slide correction would be necessary on the part of the respondent; therefore, the respondent requested Black Rock to prepare to “clean up” the construction site and remove all of its equipment. Leo A. Vecellio, Sr., President of Vecellio and Grogan, Inc., of which Black Rock is a wholly owned subsidiary, testified that at this meeting he understood the contract was cancelled and that Black Rock would be compensated by supplemental agreements for preparing the job site for *342 studies by the respondent and for moving out all of its equipment.
Supplemental agreements were thereafter entered into by Black Rock and the respondent for such items as idle equipment, site preparations necessary for a delay of the project, moving and storing materials already at the site, and various and sundry other items. Some of those agreements refer to the “mutual rescission” of the project or the “termination” of the project. Black Rock was well aware at the time the agreements were made that the project was stopped. These agreements were the only method whereby Black Rock could be paid for work it performed on the project site. The respondent contends that the signing of these agreements by Black Rock was a waiver of Black Rock’s right to recover for losses sustained as a result of the termination of the contract.
Joseph S. Jones, the State Highway Engineer for the respondent during the period in which this claim arose, testified that the project was stopped due to the costs involved in correcting the slide and the delay necessary for the respondent to perform design work to correct the slide. As to his comments made at the June 13, 1974, meeting he stated, “Then we . . . the last part of it, I said, ‘Then we’ll get together.’ We did not terminate the contract, but stopped it right then. We said, ‘there are things we’d like to meet in the field with you to go over to get this in a shape so that it will be in as good a condition as we can to leave it until such time as a new contract was let.’ ” It was after this meeting that the respondent sent the letter using the phrase “mutually rescinded” with reference to the contract. Black Rock contends that the contract was unilaterally cancelled while the respondent contends the contract was mutually rescinded.
It is clear under the evidence in this case that the project was stopped and Black Rock’s contract was terminated or rescinded but the Court cannot conclude that the recission was “mutual.” Mutual connotes a meeting of the minds and it does not appear that there was a meeting of the minds between the parties respecting the termination of this contract. Al *343 though, as a practical matter the respondent may have had no choice in the premises, it unilaterally terminated the contract without fault on the part of Black Rock and Black Rock was damaged as a result of the termination. The argument that Black Rock waived its rights incident to the termination by executing supplemental agreements related to closing the project is regarded as unmeritorious.
It is well established that a party to a contract who is prevented from performing it through no fault of his own may recover as damages that profit which he would have made upon full performance. 12 Am. Jur. Contracts §386. The parties have entered into a written stipulation to the effect that that sum in this instance was $294,354.04.
The second item of damage claimed presents a more unusual question. It relates to another Marble Cliff contract which was assigned to Black Rock. Under the terms of the contract, Black Rock was to dispose of waste material from the project in an area which the Town of Bethlehem intended to develop into a municipal park. The fill material was not available to Black Rock when the project was stopped. As a result, Black Rock was obliged to cancel its contract with the Town of Bethlehem and later negotiated a settlement of its claim at a cost of $18,387.42. The general rule is that attorneys’ fees and expenses incurred in litigation are not recoverable as an item of damages in an action ex contractu but an exception to the rule exists where a breach of contract has forced a party to maintain or defend a suit with a third person. Among the losses recoverable in that instance may be the expenses of counsel fees, court costs and the amount of a judgment. 5B M.J. Damages §44. The agreement by and between Black Rock and the Town of Bethlehem resulted in litigation as a direct result of the rescission of Black Rock’s contract with the respondent. The Court, therefore, makes an award to Black Rock in the amount of $18,387.42 for this portion of the claim.
Award of $312,741.46.